Good morning, Your Honors. Mark Alpert for Appellant Hacienda. At issue in this case, at least superficially, are procedural issues such as rightness. However, we submit to the Court that's what really at issue in this case is whether property owners like Hacienda will ever, ever have meaningful access to the courts of the United States to adjudicate takings claims. We submit that if the decision of the district court is affirmed, there is no scenario, no scenario under which Hacienda can have meaningful access to the courts of the United States. And that is a fundamental role for the courts of the United States, obviously, to adjudicate claims related to the Fifth Amendment. Well, let's start with the Williamson case. Yes, Your Honor. Yes, sir. The Williamson case adopts a two-pronged test, of course, for rightness. The first prong of the Williamson case, of course, is a complete administrative decision. I don't think there's any real issue in this case as to whether the first prong has been met. We have a final administrative decision. And the Williamson case, as we cited in our papers, essentially says you don't need to complete your administrative, an administrative writ proceeding or a court proceeding challenging that administrative decision to have a final administrative decision, because that is remedial in purpose. The second prong of Williamson County, which is really sort of at issue in this case, is the so-called state compensation prong. And the idea there is that we don't have a right of takings claim unless we have a final decision in which the State has denied compensation. Now, it's important to note that Williamson County arose in the context of a zoning decision. All right? So what happens is the applicant asks for a zoning variance of some kind and is denied. There is no compensation issue in a zoning decision. That's very different from the context that we're facing here, Your Honors. In this case, we have an underlying rent increase application process. The whole substance of this rent increase process in this case is the city or Hacienda files an application with the City of Morgan Hill and says, please give us a rent increase of $200. We need this rent increase, and if we are not granted this rent increase, we're going to have our property taken. Now, the City of ‑‑ it's undisputed, of course, that the City of Morgan Hill has denied that rent increase application. Now, the doctrine of rightness is very simple, really a very simple concept. It says, at least in the jurisdictional sense, it says, do we have a clear dispute here, or do we have a hypothetical issue that's not really ready and framed for adjudication? Well, what about a remedy that the State could give? You haven't exhausted and gone to the State court and found out what kind of relief you would get. Well, Your Honor, actually, our position is, well, first, there's really two levels to that. The first issue is, is the inverse condemnation cause of action, or a claim, is that the only kind of State remedy that we can seek to have a right claim? The doctrine of rightness is only about the question of whether or not the State has said no or the City has said no. It's not ‑‑ it decidedly is not an exhaustion issue. In fact, in Felder, the United States Supreme Court has specifically said you can't apply exhaustion requirements to a 19‑year‑old. Because the issue is whether there is a remedy that you can get in the State. Right. And there are actually more than one remedy. I guess you could say, fortunately, in California, you have more than one remedy. The rent increase application process itself is a remedy. Hacienda has actually sought compensation. No, no, that's not the remedy, because there's no deprivation until that City board makes a determination of how much the rent increase will be, right? So that's not the remedy. That's what results in the deprivation, if there is any deprivation. So the question is, after you say there's a deprivation, then have you gone after a State remedy? Answer in this case is no, right? Well, Your Honor, we respectfully disagree with that. Our view is that the deprivation is taken because rent control has been in place. And this rent control ordinance has been in place in the City of Morgan Hill since 1980. And over time, it has become confiscatory and caused a taking. The rent increase application is the effort of Hacienda to seek a remedy for that taking. The taking is in place because the rents are stuck at a confiscatorily low level because of the automatic application of the rent control ordinance. But let's assume, for the purposes of argument, that we're wrong on that rightness argument, that the remedy that the only the remedy that Williamson County is referring to from the zoning condition is an inverse condemnation remedy. There is also applicable in California or under Federal law a futility defense. And we believe that the futility defense is directly applicable in this case. If this Court agrees that an inverse condemnation cause of action is the sort of remedy that's required to cause a compensation for a taking, by definition, we have a futile remedy in California, because under Kavanaugh and Gallin, the California Supreme Court has said you don't get an inverse condemnation remedy. The essence of those two cases is that if you can, even if you can prove that there's been a confiscatory rent control, what you get to do, congratulations, is go back to the very rent control agency that has caused the taking in the first place. And in fact, Gallin basically says that's your only remedy until essentially you've gone bankrupt. We would respectfully submit that under any reasonable interpretation of the Fifth Amendment. That is not, that is not a reasonable remedy for taking. And it certainly is not an inverse condemnation remedy. The second reason that Kavanaugh expressly doesn't reach the issue, right, of cases in which that remedy might be inadequate. Well, I would submit that the question leaves it open. And Gallin takes, I think, the extra step and says that a 1983 case that was brought in that case is subject to the so-called Kavanaugh adjustment. So I think they have closed the loop in that regard, Your Honor. The second reason that I believe that there is not an adequate remedy in the California State court is the standard of review that's been adopted to takings cases by the California Supreme Court. The Santa Monica Beach case, which was decided in 2001, in essence, the Court adopted an extremely deferential standard. It rejected a substantially advanced standard. Now, it has been said that just sort of a general antagonism to takings is not a good enough reason to find futility. But as in the case of both the Kavanaugh adjustment and Santa Monica Beach, what's happening is the California courts are specifically rejecting federally mandated standards, and they're specifically rejecting the law of the Fifth Amendment as it has been applied and interpreted by the Supreme Court and the Ninth Circuit. By definition, if one does not – one applies the deferential standard that was applied in the Santa Monica Beach case, there will be no takings claim because there will be no evaluation of whether or not the rent control ordinance in any way advances the goal of that rent control ordinance. And so thus, by definition, Hacienda and similar property owners will never have a right to prove in California that the rent control ordinance doesn't work. And that's central to their theory in this case. Well, would that really be true? We have two different standards. You're correct that the standard of arbitrary and precious as opposed to substantially advanced. But does that mean that California provides no remedy? Well, actually, I would say, Your Honor, that it provides no remedy for certain kinds of claims, including the very kinds of claims asserted by Hacienda. If you apply an arbitrary and capricious standard, the Court will never examine whether the rent control ordinance in any way actually achieves its purpose. Essentially, all the Court will do is decide whether the purpose is proper. And the theories propounded by Hacienda in this case really center on the argument that the ordinance, as it has been applied, does not advance the purpose of rent control. We're not fundamentally challenging the purpose of the ordinance. In any event, Your Honor, Your Honors, our point here is, or our point is that if the district court's decision is affirmed, the real result will be that there will be no access to the Federal courts for Hacienda. If Hacienda is sent back to California, it will be in front of a California court to hear an administrative mandamus action. And in looking at that administrative mandamus action, really the question is, it's hard to decide whether Hacienda is better off if it wins or if it loses an administrative mandamus action. If Hacienda wins the administrative mandamus action, congratulations, what you've won is a trip back to the agency that caused the taking.  If Hacienda loses the action, it's a trip back to the agency that caused the taking. Kennedy. Well, we do that all the time. If we reverse something, we send it back to the district court to apply what we've said in the opinion. So that isn't unusual. In many cases, that's fine, Your Honor. The problem here is what we're dealing with is the Section 1983 claim, and the importance of having a direct remedy to the Federal courts has been established by law. And the very reason that we have that requirement is because there's a – it's really an application of the fundamental importance of this act. But wait a minute. We're getting beyond the question. You're saying that by sending it back to the rent control agency, that, in effect, is no remedy at all. Now, Kavanaugh doesn't really say that. Kavanaugh says you've got a remedy, but the manner in which you're going to recover it is over a period of time. So there is a remedy. There is a remedy, but it's not a constitutionally adequate remedy, Your Honor. That's precisely our point. And it doesn't – it creates an administrative hurdle that the Supreme Court has long held, you know, with Felder, to a takings claim that is just inadequate. That's the problem. It's a remedy, and it's also inadequate because, I mean, the very purpose of the Fifth Amendment and the way it's – the reason that it's framed the way it is, is there was a deep suspicion on the part of the framers regarding allowing certain individual rights to be subject essentially to the whims of political bodies. And I think if you look through the State of California, the State court system is not a political body. Well, the State court system under the Kavanaugh adjustment and Gallant is not going to decide the takings claim. It's going to – it's going to, in essence, send the claimant back to the administrative agency. It is, in effect, an advisory opinion procedure. And, of course, the Court's aware of the first English decision, which was really a rejection of almost an identical kind of procedure that California had adopted. Excuse me. My mouth is a bit dry here. In any event, basically, the role of State courts under Kavanaugh and Gallant is an advisory opinion. Basically, it says – it spanks the administrative agency and says, go back and do that again. And first English, which the United States Supreme Court decided, of course, that almost exactly the same kind of process as related to temporary takings that California had adopted was not proper. Well, but it was a – they said it was a complete taking, although temporary, in first English. Yeah. I guess, yeah, the underlying case did involve a complete temporary taking. But the point of it was, as I see it, Your Honor, is California had adopted a writ of mandamus procedure, in effect, as the exclusive judicial remedy for that taking. And that is what the Court in first English found to be inadequate, the Supreme Court found. I guess I would say, Your Honor, I'll reserve the rest of my time. Just one final point, which is, I think we see in California the consequence of what happens when the Federal courts do not take an active role in taking these claims. In cities across California where rent control, mobile home rent control has been adopted, under this premise that – the premise of it has been that you have immobile, quote, mobile homes so that – so that there's this danger of exploitation by the park owners. That's the whole premise of applying rent control. In reality, what has happened is these rent control programs have become subsidy programs. They've become far more stringent than is necessary to meet the so-called legitimate State purpose. And, of course, the whole point of the Supreme Court's decision in Armstrong, when it said what is central – what is central to the Fifth Amendment is that a few – a few individual parties shall not be required to bear the burdens of programs designed to benefit society as a whole. And what we see in here, and in this particular case, is a subsidy program being adopted. And if the courts do not – the Federal courts do not get involved, we're going to continue to see that in the State of California. Thank you. All right. Thank you. May it please the Court, Don Lincoln for the appellee, City of Morgan Hill. What the appellant wants in this case is really for this Court to overrule a long series of cases which have been decided by this Court. Certainly, Levalde and Carson Harbor applied Williamson to a rent control context. They were not just the land use context. They required that certainly that there be an exhaustion of State remedies before an action was ripe in Federal court. Those cases, though, didn't have the issue raised here that Kavanaugh makes resort to the State court of view, did they? Well, Kavanaugh is a very interesting – My question is, those cases didn't raise the issue, did they? They were – I believe they were both pre-Kavanaugh, Your Honor. The Kavanaugh itself is a very interesting case. In that case and in Galland, which followed, basically the Court applied a rate-setting approach, and a rate-setting approach which in the Kavanaugh case they actually relied upon a Ninth Circuit case as one of the bases for that. The case is Mountain Water v. Montana Department of Public Service, 919 Fed 2nd 593 at 601. And there that was a rate-setting case, and there the Court basically held there was no violation of the Constitution because the utility in that case could seek compensation for its property through future rate-setting. And the Ninth Circuit itself relied upon a U.S. Supreme Court case, Duquesne Light Company v. Barish, 488 U.S. 299 314, which had approved a similar analysis in regard to a Federal rate-setting. It's respectfully believed, Your Honors, that that is a permissible way to handle a mistake that may occur during a rate-setting process or a rent-setting process. That is what Kavanaugh adopted. What happens under a Kavanaugh, if the landlord comes in, goes through a rent, and says that there has been a mistake, the court reviewing finds there is a mistake, the court can either correct it itself, that's very unusual, but it has occurred, or more normally it sends it back for a rehearing and a new rent hearing, at which point the administrative body, the rent commission, should take into account any delay in setting the correct rent, and at that point sets the new rent and also gives what's known as a Kavanaugh adjustment to make up during the rate-setting for any temporary delay in setting the appropriate rent. I suppose that this has gone on now for some time, and it's resulted in a substantial loss because of the failure to adjust the rent. Instead of a person getting damages for the loss, it's sent back to the rent agency to make some sort of adjustment in the future. But how does that help for the loss that's been suffered? Well, again, in setting the future rents, the same way it works in the PUC or before FERC, in setting the future rents, they add an increment. So if the rent should have been ---- Does that include interest on the damages that were lost? Yes. How is that? That's part of the Kavanaugh ---- that's procedurally the way the Kavanaugh works, and I believe that's set out, Your Honor, in both Kavanaugh and in Galland. In both of those instances, that ---- and it's also mentioned in a case called Yee, another State court case. In those cases, in each instance, there was an initial mistake. It went up to the court and then was sent back for a future ---- for a further rent hearing, at which time you get an additional rent to make up for that. And the court ---- Do you get that? Or is there an additional hearing in which the rent agent ---- rental control agency can say no adjustment is required? Certainly they can say that, but then they are ---- That can help on the taking. Then they are subject to review again, and at some point, obviously, the court will say you can't do that and will itself set a rent increase. That has ---- A little bit like the Almonte Dunes. You go back and forth, back and forth. Well, except, Your Honor, it can be and normally is much quicker. That took a huge amount of time. You can have a ---- you're supposed to file a writ within 90 days. You have a ---- you can go forward with a hearing in the writ of mandate quite quickly. And, in fact, they point out in Kavanaugh, they made an indication that it is up to the landlord, because he has the power to expedite, to go forward. And if he doesn't proceed, then he can't complain that he has lost, because there are procedures for going forward. Kavanaugh and Golan both say that in the event that, for some reason, the board or the court can't come up with a new rent that would be imposed and collected, then and only then can the ---- is there a taking. But there is a procedure to go through. Now, if the property owner were to go to state court on it, you know what, for an administrative writ of mandate. Right. Yes. And either the state court denies the writ or grants. They wouldn't grant the increase, but they would send it back to the state, you know, to the agency. That's true. But but but when the court gives some indication as to why it believes, you know, the challenge rent is confiscatory. Right. And give some indication. But it's possible, too, that the that the property owner might feel that. Well, the amount of increase that would be allowed by this, by the by the writ of mandate is insufficient. So then in either of those cases where it's insufficient or completely denied, that would be the time when the property owner then could bring a 1983 action. Well, Your Honor, I believe that it depends on what grounds he's bringing the 1983 action. If he is bringing the grounds on the grounds that he had was denied a fair return. And if the state court has found that there was substantial evidence that the rent increase granted him a fair return, we respectfully believe that that would be collateral estoppel if he didn't continue to appeal that as to that issue. Now, if there were other grounds not related to a fair return analysis, then he would be free to do that. For example, in this case, Your Honor, there, as pointed out in the in the briefs, there is a companion state case underway. There has already been a writ hearing before the Superior Court on September 22nd. The court issued a decision and at least preliminarily found that the writ should be denied. That is, there is substantial evidence supporting the action of the rent board and that there was no denial of a fair return. Now, that is only part of the state court case. But that particular part of the state court case, at least, there has been a writ ruling on. There are other claims in the state court case. So if that stands, the property owner will be foreclosed from a challenging federal court because of a race judicata? Your Honor, again, it depends on what grounds. If it's based on a fair return, that's correct. He's had an administrative decision. If he can go forward, he can go forward through the state's court system. He, of course, can appeal that or attempt to appeal it through cert, through the United States Supreme Court. This is ---- Well, let me ask you this question. Can a property owner bring a challenge under this, you know, transfer of wealth theory on some basis other than a denial of a fair return? Yes, Your Honor. There is a ---- there are cases. For example, in both state and federal court, in Sandpiper, which was a case that was decided right after Yee, they brought such an action. They brought it both as a physical and a regulatory taking. The reason they were able to bring it there without filing a writ was it was a facial challenge. They facially challenged the ordinance. The reason they were able to facially challenge the ordinance in that case is that they brought it within the statute of limitations for a facial challenge. In federal court, one year, LaVault and Mazul. In state court, Sandpiper, five years. They did ---- in Sandpiper, they reached the merits of that, and because it wasn't barred by the statute of limitations, and upheld the rent ordinance as substantially advancing a legitimate state interest, applying, incidentally, in that particular case, the Nolan-Dolan rule. Let's see. So I understand this. The remedy that is required under your view is that go forward with the mandamus action. Yes, Your Honor. If the mandamus action is decided adversely, that forecloses the federal court from ever getting into the situation at all. Again, on if ---- Collateral estoppel. Yes. If the federal court is based ---- jurisdiction is based on a fair return theory. Well, that's ---- isn't that the theory here? Well, it's a little hard. I think, Your Honor, he's really attempting, as the district court noted, he's attempting to both have a facial challenge that is based directly on the premium created by the statute ---- Well, we know that the facial challenge is out. So now we're talking about an as-applied challenge. His as-applied challenge, he goes based on a fair return, and assuming that there was a fair return and a court decides that there was a fair return, that's correct. He gets one chance at that. That is one chance to go through a court ---- That's all in a state court. In a court system. That is correct, Your Honor. A state court system. That is correct, Your Honor. So the federal 1983 claim is completely foreclosed. Well, by collateral estoppel, assuming that it ---- yes, assuming that he raises the same ---- would attempt to raise the same claim in federal court. That's correct. Well, here, as I understand the as-applied claim, it's very similar to what you call the facial challenge. Yes. Right? So in that situation, the property owner wouldn't necessarily be foreclosed on that kind of as-applied challenge. I'm not asking you to, you know, commit yourself because you may face a situation down the road, but, I mean, it's theoretically possible that he wouldn't be foreclosed, right? On a facial challenge, assuming the statute of limitations didn't apply, that's correct, Your Honor, unless he obviously ---- if he raises the facial challenge in the state court and they decide that, which, incidentally, in this case, arguably he has. As I say, there are a couple of causes of action in the state proceeding. One of them is the writ of mandate. Another one is a deck relief action, which arguably does raise that. Right. But I think that's consistent with another case that this Court decided many years ago or several years ago, Palomar Financial, a Palomar case. Excuse me, not Palomar Financial, Palomar Mobile Home case. And in that case, the question was, if you went through the state proceedings, were you ---- could you come back here? And this Court held, no. If you've raised the issues, if you've had a chance to litigate them, assuming that this Court doesn't find that the state procedures are inadequate, and respectfully, I believe, Your Honor, as recently as Hotel Motel Association, which was decided just a couple of weeks ago, they quoted Your Honor in saying, quote, We have expressly held that post-1987, California's inverse condemnation proceedings are adequate to address a regulatory taking claim. I think, Your Honor, the action is foreclosed. Thank you. Okay. Thank you. Rubato. Your Honor, with all due respect, I believe appellees have essentially just made our case. Essentially what's being argued by the city is that in order to ripen our Federal claims, we have to extinguish our Federal claims. And that is fundamentally inconsistent with our right to have our claims adjudicated in Federal court, and it's inconsistent with the right under Section 1983 to have a claim immediately go to a Federal court. The only reason that this case was dismissed was rightness grounds, not exhaustion of remedies. Again, exhaustion of remedies does not apply to a 1983 claim. And I just want to clarify one of the issues that one of the members of the Court asked about. We would we contend that we really have two different as-applied claims in this case. First, we argue that, in essence, the denial of the $200 rent increase application is an as-applied claim in the sense that it does not allow a fair return. We've been deprived our constitutionally mandated right of return. The second as-applied claim is a, a, a, what we, what we could describe as sort of the premium challenge. We're arguing that the denial of the rent increase application has caused this premium, which renders the ordinance unconstitutional. Now, the city has argued that Laval, which the members of this Court I'm sure are very familiar with, in effect holds that only that second kind of as-applied claim that we're attempting to assert can only be brought as a facial claim. And as part of our appeal, Your Honors, we take issue with that argument. We think that Laval actually did leave open the possibility of arguing that the ordinance as-applied could cause unconstitutional premiums. We think that the United States Supreme Court in Delmonte Dunes specifically held that you could assert this, this kind of substantially advanced claim. Why is the premium in itself unconstitutional? The premium in and of itself causes the ordinance to be unconstitutional because it prevents the ordinance from serving its purpose. The whole, the underlying reason or rationale for rent control is that it creates affordable housing. Richardson and Cayetano, the two decisions this Court is I'm sure familiar with, essentially find that that ordinance cannot serve that purpose when a premium exists, because all that really happens is that the discounted rent becomes translated into a premium, which is basically paid by the new owner. So the ordinance, I don't, the ordinance does not, no longer advances the purpose of affordable housing. And I guess the question. What is the, advancing the purpose is part of what claim? That is, that will, as I said, there are, we really have, I believe we have two. Isn't that part of the taking claim? We have, we have two takings claims. Yeah. As I see it, Your Honor. One, that the denial of the rent increase essentially is a confiscatory taking, the denial of a $200 rent increase application. The other taking claim is that this premium claim, which essentially is that the ordinance is unenforceable or unconstitutional because it does not substantially advance a legitimate State interest. But it's because you're taking, under your theory, you're taking something from the landowner. Is that right? And, but it is not being appropriately done because it does, does not achieve the purpose for the taking. That's, that's right. That's the second. Like all, they all kind of relate back to the same thing. So taking, it's improper because number one, it takes money away from, from the landowner.  for the taking. Besides that, it isn't accomplishing its purpose. Is that it? Right. Now, in theory, you could have a premium exist and still have, you know, and still have a property owner be earning a fair return. In other words, the premium itself is what's causing, you know, at least in one part of our claim, the ordinance to not substantially advance the legitimate State interest. It's in some ways separate from the question of whether or not you can, it's distinguishable in the sense that even if, even if our clients were compensated or were requesting compensation for this taking, the ordinance would serve. But you're objecting to the fact that the premium is not going to the, to the landowner. Isn't that it? That's the taking. No. Actually, I would, I would disagree with that characterization. And in fact, I think California courts, and I think even Federal courts have sort of rejected sort of this misappropriation, this, that kind of theory as it relates to a premium. The essence of the premium challenge really is you cannot have an enforceable rent control ordinance that essentially doesn't serve the purpose of rent control. And that is separate and apart from whether or not even the. But now why is that? What, what constitutional right does that violate? That violates the Fifth Amendment, Your Honor. Because? Because essentially as the Ninth Circuit is, and the United States Supreme Court has held, you, if you cannot regulate in such a way property owners' rights in such a way that does not substantially advance legitimate state interests. Because why? Why can't you do that? Under the Fifth Amendment. Because, because of the taking, isn't it? Where in the Fifth Amendment does it say you can't regulate and so forth? I guess, I guess I would say I agree that it is a taking. There are takings, there are compensable takings and non-compensable takings. So in other words, it's almost irrelevant whether you compensate the property owner in this case. The existence of the premium is what renders the, renders, that's part of our claim. That's what I, I can't understand that argument. All right. So if you, if we follow your argument through, I mean, I mean, the whole rent control system has to go down the tubes because, because, because if you get the, right? If you get the, if you get the increase, there's no rent control, right? Well, if this Court wishes to. So what you're saying is a rent control can't ever, you know, a government can't ever institute rent control. That's what your argument amounts to, isn't it? Actually, I would disagree with that characterization, Your Honor. And the reason for that is there are ways to address the premium problem without. You mean control the, the sale price of mobile homes. Exactly, Your Honor. You can address the premium problem separate, separate and apart from, I agree that the reduction in rent contributes to and causes the premium problem, but there are ways you can address the premium problem without changing the, the underlying rents. I would like you to, to clarify for me where in the Constitution it says that in Fifth Amendment that you cannot have a rent control situation that creates a premium. Well, I guess I would say, Your Honor, I'm essentially applying what the holdings have been in, in Richardson. So I just, to answer my question, I guess, where in the Fifth Amendment does it say that? I guess there's always been sort of a due process element to the Fifth Amendment, and I guess it would be sort of incorporated in that kind of argument. There are certain So we're now that, we're relating that then to due process. Well, there's, there's always been certain kinds. If you go back to Armendariz, which this Court decided, which is a private taking theory, there are certain kinds of takings that just can't occur regardless of compensation. Oh, okay. So we're back to taking then, aren't we? I guess I would have to concede it is a taking, yes. All right. Okay. Thanks. Any further questions? All right. Thank you, Mr. Alpert. Thank you, Mr. Lincoln. This case is submitted for decision. The panel will take a brief recess before we return for the balance of the calendar. And quiet for a second. Maybe go around the other way. All right. Why don't you repeat it? All right. All right. Yeah, yeah,  yeah, yeah,  Yeah. mhm yeah, okay. Yeah, yeah, mm. Mhm, no, five, this happened. Okay. Mm hmm. Okay. Yeah, right. Yeah. Yeah. Okay.  Yeah. Yeah. Yeah. Yeah. Mm. Yeah. Okay.   entinely. Yeah, yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Well, yeah. Yeah. Yeah. Yeah. Yeah. Okay, yeah. That's actually mm hmm. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Mm hmm.  Yeah. Okay. No, Yeah. What's OK. Yeah. Okay. Right. Yeah. And Okay. Mhm. Yeah. Yeah. Okay. Oh, all right. Yeah. I don't know. All right. Yeah. Yeah. Yeah. Okay. Yeah. Okay. Okay. Yeah. Yeah. I know. Yeah. Yeah. I know. Yeah. Yeah. Mhm. Yeah. Yeah. Okay. It's correct  It's all right. Yeah. Yeah. Okay. Yeah. Okay. Yeah. Okay. Good.  Okay. Okay. Okay. Okay. Okay. Okay. Yeah. Oh, yeah. Okay. Yeah. Yeah. Yeah. Yeah. Yeah. Okay. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. All right. Okay. Be seated, please. We'll call the next and last case on the calendar. Wilkins versus City of Oakland and Tim Scarrett.
judges: Hug, B Fletcher, Tashima